**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Newport News Division**

**UNITED STATES OF AMERICA,**

**v.**                                                    **Criminal No. 4:16cr70**

**MARVIN L. MADDICKS,**

        **Defendant.**

## MEMORANDUM ORDER

This matter is before the Court on Defendant's motion to dismiss the indictment and "Notice" of intent to raise a "Public Authority Defense" at trial. ECF Nos. 14, 15. The Government filed a consolidated brief opposing dismissal and asserting that Defendant should not be permitted to present his public authority defense to the jury. ECF No. 19. The Court conducted two hearings on the pending motion/notice, and each party presented the live testimony of a different DEA special agent (Special Agent Michael Beam was called by the Government and Special Agent John Koeppen was called by the defense). Defendant did not testify at either hearing, did not call any third-party witnesses, nor did Defendant seek to proffer testimony that he anticipates presenting at trial.

In addition to the written filings referenced above, the Court also has before it Defendant's oral "Notice" that he plans to pursue an "innocent intent" strategy at trial (based largely

on the same facts underlying the "public authority" affirmative defense previously noticed). The Government challenges such alternative strategy, arguing that, for the same reasons the Government opposes the public authority defense, Defendant should not be permitted to pursue the innocent intent strategy at trial. At the conclusion of the second hearing, the Court afforded the parties additional time to submit supplemental evidence, and inquired into the availability of a transcript of Defendant's guilty plea proceedings in another criminal case in the Richmond Division of this Court.[1]

On March 29, 2017, Defendant filed a motion for leave to file supplemental exhibits. ECF No. 40. The Government filed a brief in response that does not oppose the supplemental evidence, but disagrees with Defendant's characterization regarding the import of such evidence. ECF No. 42. Additionally, on April 26, 2017, Defendant filed a second supplement, consisting of the transcript of Defendant's guilty plea proceedings in the Richmond criminal case.[2] With the record supplemented, these matters are now ripe for review.

---

[1] As discussed herein, Defendant was indicted in Richmond (Case No. 3:16cr53) several months prior to being indicted in the instant case. Consideration of the Richmond guilty plea transcript appeared important because the issues pending before this Court are predicated on the alleged interrelationship between the earlier-in-time Richmond criminal case and the instant matter.

[2] This Court was previously informed that the Richmond transcript was available on the Richmond docket.

## A. Motion to Supplement

Defendant's unopposed motion to supplement is **GRANTED**. The Court will consider the evidentiary materials filed by both parties after the hearings.

## B. Motion to Dismiss the Indictment

On January 29, 2016, Defendant was arrested in Richmond, Virginia based on his involvement in an interstate marijuana trafficking conspiracy. Defendant agreed to speak with Richmond DEA agents, admitted his involvement in the marijuana conspiracy, and chose to cooperate pursuant to a written DEA "Confidential Source Agreement." Defendant was released, and he assisted the Richmond DEA Agents in apprehending a Maryland co-conspirator, which occurred on February 10, 2016. After such apprehension, Defendant was permitted to continue living in Newport News, Virginia, and the Richmond DEA agents were hopeful that Defendant would be able to provide additional information on yet to be identified drug trafficking targets. Defendant stayed in contact with the Richmond DEA Agents throughout February and early March of 2016 through text messages and telephone calls. However, during this time, Defendant provided limited, if any, useful information, and the Richmond DEA agents supervising Defendant never asked him to engage in any controlled drug transactions (as a buyer, or as a seller) and never provided him with any controlled substances or firearms.

3

Defendant likewise never informed the Richmond DEA Agents that he possessed any controlled substances or firearms during this time.

On March 17, 2016, Defendant was arrested at his Newport News residence after a neighbor made a drug complaint and the local police identified a stolen car in front of Defendant's residence. A search of the residence (pursuant to a warrant) resulted in the seizure of over three pounds of marijuana, approximately 25 grams of crack cocaine, 20 grams of powder cocaine, 27 ecstasy pills, four firearms, four digital scales, multiple cell phones, and $29,985 in currency. The Richmond DEA agents were unaware of such search and arrest until days or weeks after it occurred, and upon discovery, Defendant was deactivated as a DEA cooperator.

In April of 2016, a federal grand jury sitting in Richmond Virginia returned a single-count indictment in case number 3:16cr53, charging Defendant with conspiracy to distribute and possess with intent to distribute marijuana.[3] The Richmond indictment alleged that Defendant was involved in such conspiracy from mid-2015 "through and including January 29, 2016," the date Defendant was arrested in Richmond. Case No. 3:16cr53, ECF No. 1. Defendant was not charged with any crimes

---

[3] It appears that Defendant's prosecution for the Richmond marijuana conspiracy had previously been deferred in light of Defendant's ongoing cooperation with the DEA.

involving cocaine (in any form) or ecstasy, nor was he charged with the unlawful possession of any firearms.

On September 13, 2016, a federal grand jury sitting in Newport News returned an indictment in the instant case charging Defendant with possession with the intent to distribute marijuana, cocaine, cocaine base, and ecstasy, as well as three separate firearm counts. ECF No. 1. On September 27, 2016, while such Newport News indictment was still under seal, Defendant pled guilty in Richmond to the marijuana trafficking conspiracy charged in case 3:16cr53. Defendant's plea of guilty in Richmond was made pursuant to a written Plea Agreement, which contained an immunity provision. Case No. 3:16cr53, ECF No. 15. Defendant also signed a written "Statement of Facts" indicating that the Richmond conspiracy continued "through and including February 10, 2016," the date Defendant's Maryland co-conspirator was arrested. Case No. 3:16cr53, ECF No. 16. Defendant was subsequently sentenced to 46 months imprisonment in the Richmond case, and: (1) his Guideline range was not enhanced based on the drug seizure in Newport News; (2) his Guideline range was not enhanced for the possession of any firearms; (3) the Government repeatedly stated at Defendant's Richmond sentencing hearing that the Newport News conduct was a separate matter, Case No. 3:16cr53, ECF No. 27; (4) defense counsel reminded the Richmond sentencing judge that the Newport News conduct remained merely

"allegations" and that Defendant was "presumed to be innocent of those offenses," id. at 7; and (5) the Richmond Court expressly indicated that the "prosecution in Newport News will stand on its own merits," id. at 9.

Defendant's motion to dismiss the instant indictment asserts that "[t]he conduct for which Mr. Maddicks stands accused in the instant matter is nothing more than a continuation of the conduct and was part of the same continuing conspiracy to which he pleaded guilty in the Richmond case." ECF No. 14, at 4. Defendant further argues that the use of the phrase "through and including February 10, 2016" in the Richmond Statement of Facts does not establish an end date of the Richmond conspiracy, but instead describes an "open-ended timeframe." Id. Defendant contends that, pursuant to contract-law principles, the timeframe of the conspiracy and the immunity provision in his Richmond plea agreement should be deemed "ambiguous" and construed against the Government as drafter.

Having heard oral argument from the parties, received exhibits and live testimony across two different hearings, and considered supplemental evidentiary submissions, the Court finds that Defendant fails to demonstrate that the Newport News conduct charged in this case is merely a continuation of the Richmond conspiracy. While the Court acknowledges the theoretical possibility that the marijuana found in Newport News

could have been left over from the Richmond marijuana conspiracy, Defendant fails to advance evidence or proffer on which a reasonable juror could conclude, without resorting to speculation, that the marijuana seized in Newport News was obtained by Defendant as part of the Richmond conspiracy.[4] Moreover, even if "left over" from such conspiracy, Defendant did not alert the Richmond DEA agents to his possession of such a large quantity of marijuana at the time of his Richmond arrest, during any subsequent DEA debrief, or during any phone calls/text messages with DEA agents during Defendant's period of cooperation.[5] Even more glaring is Defendant's failure to point to any direct, indirect, or inferential evidence suggesting that the other types of controlled substances seized in Newport News (cocaine, cocaine base, and ecstasy), or the four seized firearms, were in any way associated with the Richmond

---

[4] Defendant highlights the fact that, as part of the Richmond conspiracy, marijuana shipments had been received by Defendant in Newport News in the past, that Defendant had rented the same residence in Newport News for some time, and that there was substantial evidence of marijuana trafficking found in the residence (such as a large bag of discarded marijuana stems). While such facts may be "consistent" with Defendant's speculative theory, they are equally consistent with numerous other possibilities, to include Defendant finding a new unrelated source of supply for marijuana after the Richmond conspiracy was discovered by authorities and terminated. In plain terms, Defendant seeks to rely on the theoretical possibility that the Newport News drugs were related to the Richmond conspiracy and points out limited facts that are not inconsistent with such possibility rather than advancing evidence on which a reasonable factfinder could conclude that there was in fact a connection between the crimes.

[5] The Government argues in its most recent submission that Defendant not only hid his possession of guns, marijuana, and other controlled substances from the DEA, but that he failed to disclose the Newport News address where such items were found.

7

conspiracy. Importantly, Defendant did not testify at either of the hearings conducted by the Court nor did he proffer his anticipated trial testimony. He also failed to call a third-party witness to provide context for the origin of the drugs or firearms seized from Defendant's residence. Defendant's conspiracy continuation theory therefore fails because the record lacks: (1) any evidence even providing an inference that the Richmond conspiracy involved firearms, cocaine, cocaine base, or ecstasy; (2) any information indicating that any Richmond co-conspirator was involved in the Newport News conduct; (3) any information suggesting that the various drugs found in Newport News, including marijuana, came from the same source of supply, or through the same contacts, as the Richmond marijuana; or (4) any evidence or proffer of testimony that effectively links the two offenses beyond the fact that Defendant received marijuana shipments at his Newport News home during the earlier-in-time marijuana conspiracy. Cf. United States v. Ragins, 840 F.2d 1184, 1188–89 (4th Cir. 1988) (explaining, in the context of a double jeopardy challenge turning on whether alleged successive conspiracies charged the "same offense," that the court should evaluate "(1) the time periods covered by the alleged conspiracies; (2) the places where the conspiracies are alleged to have occurred; (3) the persons charged as co-conspirators; (4) the overt acts alleged

to have been committed in furtherance of the conspiracies, or any other descriptions of the offenses charged which indicate the nature and scope of the activities being prosecuted; and (5) the substantive statutes alleged to have been violated") (citation omitted). In short, Defendant's motion to dismiss fails as a matter of law because Defendant advances so little evidence to link the crimes at issue, not because the Court finds Defendant's evidence to lack credibility.

In addition to Defendant's failure to effectively highlight evidence suggesting that the Newport News conduct was a continuation of the Richmond conspiracy, the Court rejects Defendant's contention that the Richmond Plea Agreement or Statement of Facts are "ambiguous." The Court similarly rejects Defendant's proposed strained reading of Richmond case documents as establishing that the Richmond conspiracy was an "open-ended conspiracy" rather than a conspiracy that ended either: (1) when Defendant was arrested in Richmond (January 29, 2016—the end-date of the conspiracy as stated in the Richmond indictment and repeated by the presiding judge at Defendant's Richmond guilty plea hearing, ECF No. 44-1, at 7); or (2) when Defendant's Maryland co-coconspirator was arrested (February 10, 2016—the end-date of the conspiracy as stated in Defendant's Richmond Statement of Facts). The immunity provision in the Richmond Plea Agreement clearly states that "The United States will not

further criminally prosecute the defendant in the Eastern District of Virginia for the specific conduct described in the Criminal Indictment or statement of facts." Case No. 3:16cr53, ECF No. 15 (emphasis added). Although the Richmond Statement of Facts indicates that the facts recounted therein "do[] not describe all of the defendant's conduct relating to the offenses charged in this case nor [do they] identify all of the persons with whom the defendant may have engaged in illegal activities," Case No. 3:16cr53, ECF No. 16, the pragmatic acknowledgement that each and every detail of Defendant's Richmond marijuana conspiracy is not specifically recounted in the Statement of Facts cannot reasonably be interpreted as automatically immunizing Defendant from prosecution for any and all drug trafficking activity, including conduct involving ecstasy, cocaine, and firearms, that was allegedly committed in a different city more than a month after the marijuana conspiracy ended. Rather, as discussed above, in the absence of evidence linking the two crimes prosecuted in different divisions of this court, Defendant fails to demonstrate that his Newport News conduct, involving firearms and various types of controlled substances not involved in the Richmond conspiracy, occurring more than a month after the end of the Richmond conspiracy, falls within the "specific conduct" described in the Richmond indictment or Statement of Facts. To the contrary, based on the

10

record before this Court, such conduct appears geographically, temporally, and factually separate and distinct. Accordingly, Defendant's motion to dismiss the Newport News indictment is **DENIED**.[6]

### C. Innocent Intent/"Public Authority" Theories

As established by controlling precedent governing the "innocent intent" defense strategy:

> "The defendant may allege that he lacked criminal intent because he honestly believed he was performing the otherwise-criminal acts in cooperation with the government. Innocent intent is not a defense per se, but a defense strategy aimed at negating the mens rea for the crime, an essential element of the prosecution's case." United States v. Baptista-Rodriguez, 17 F.3d 1354, 1368 n. 18 (11th Cir. 1994).

> While an honest belief that a defendant is acting in cooperation with the government is a necessary element of establishing innocent intent, it is not alone sufficient. That is, evidence that defendants "honestly believed" that they acted in concert with a

---

[6] While the Court's ruling herein does not rely on hearsay proffered by counsel for the Government in this case ("Newport News AUSA"), the Court notes that the Newport News AUSA represented to this Court at the second evidentiary hearing that she had been informed by the Richmond AUSA that, at the time of Defendant's Richmond guilty plea, Defendant's Richmond attorney was on notice of the fact that a separate federal criminal case would be going forward in Newport News. In response to such hearsay proffer, defense counsel asked this Court for time to communicate with Richmond defense counsel and an opportunity to submit further evidence/proffer about what Richmond defense counsel knew, and when he knew it. The Government did not object to such proposed supplement. Although defense counsel did subsequently submit supplementary evidence to this Court, he did not submit any evidence or proffer on this issue after having adequate time to communicate with Defendant's Richmond attorney.

Regardless of the specifics of what was privately communicated between Richmond counsel in advance of the Richmond plea hearing, this case provides a valuable lesson as to the benefits that would have flowed from the Richmond AUSA clarifying the scope of the immunity provision on the record at the time of Defendant's guilty plea. Such clarity could easily have been offered without revealing the existence of the sealed Newport News indictment.

11

government official could abrogate the criminal intent necessary to prove the particular crimes with which the defendants were charged, but, as we have recognized previously, any such abrogation also depends upon the nature of that official's authority.

. . .

[W]e hold that criminal intent is negated if two elements are met: (1) the defendant honestly believed that he was acting in cooperation with the government, and (2) the government official or officials upon whose authority the defendant relied possessed actual authority to authorize his otherwise criminal acts.

United States v. Fulcher, 250 F.3d 244, 252-53 (4th Cir. 2001) (footnote omitted). Similarly, in Fulcher, the Fourth Circuit went on to analyze the related affirmative defense of "public authority," explaining as follows:

The public authority defense allows "the defendant [to] seek[] exoneration based on the fact that he reasonably relied on the authority of a government official to engage him in a covert activity." Baptista-Rodriguez, 17 F.3d at 1368 n.18; see also United States v. Achter, 52 F.3d 753, 755 (8th Cir. 1995). Thus, in contrast to the innocent intent doctrine, this affirmative defense allows a defendant to seek exoneration based upon his objectively reasonable reliance on the authority of a government official. . . .

We have never addressed the scope of the public authority defense, and, in particular, we have never explained whether such a defense entitles a defendant to rely on the apparent authority of a government official or whether actual authority is necessarily required. . . .

. . . [W]e adopt the unanimous view of our sister circuits that the defense of public authority requires reasonable reliance upon the actual authority of a government official to engage him in a covert activity.

12

<u>Fulcher</u>, 250 F.3d at 253-54 (footnote omitted). Here, the Government asserts that Defendant should not be permitted to present either a "public authority" defense, or the related "innocent intent" defense strategy at trial because the record is insufficient to support such defense/strategy.

"Whether an affirmative defense is established is a factual issue that is usually a function of the jury, and the trial court rarely rules on a defense as a matter of law." <u>United States v. Sarno</u>, 24 F.3d 618, 621 (4th Cir. 1994). "However, where there is insufficient evidence, as a matter of law, to support an element of the affirmative defense, the defendant can be precluded from presenting any evidence of [such defense] to the jury or, if some evidence is already presented at trial, the court can refuse to instruct the jury on the [affirmative] defense." <u>Id.</u> (citing <u>United States v. Bailey</u>, 444 U.S. 394, 413 (1980)); <u>see</u> <u>United States v. Biggs</u>, 290 F. App'x 591, 592 (4th Cir. 2008) (holding that the "district court correctly concluded that the evidence was insufficient to allow [the defendant] to assert the requested [affirmative] defenses at trial"). Here, as discussed below, Defendant's evidence fails in two primary respects: (1) Defendant fails to demonstrate that the DEA agents with whom he interacted had "actual authority" to authorize the criminal conduct charged in the instant case; and (2) Defendant fails to demonstrate that the DEA agents made

direct, or indirect, statements purporting to authorize, impliedly authorize, or even encourage Defendant to possess large quantities of marijuana, multiple other types of controlled substances, or multiple firearms (thus negating subjective or objective reliance).

## 1. Actual Authority

At the second hearing conducted in this case, DEA Special Agent Koeppen's testimony was clear, concise, and unequivocal on this point: Agent Koeppen lacked the authority to authorize Defendant to possess firearms and ammunition as a convicted felon, and lacked the authority to authorize Defendant to possess controlled substances <u>outside the Agent's direct supervision and control</u>. The testimony of Special Agent Beam at the prior hearing was much lengthier, and somewhat less clear, but taken as a whole, can only be interpreted as confirming and corroborating the testimony of Agent Koeppen. Specifically, Agent Beam first testified on direct examination that he lacked authority to: (1) authorize Defendant to possess with intent to distribute marijuana, cocaine, cocaine base, and ecstasy; and/or (2) authorize Defendant to be a felon in possession of a firearm. ECF No. 38, at 10. On cross-examination by the defense, Agent Beam indicated that he did have authority to authorize cooperators to engage in federal felonies if properly supervised. <u>Id.</u> at 28-29. Upon clarification, Agent Beam

confirmed that this included authorizing someone to possess distribution quantities of a controlled substance, as long as it was under the Agents' supervision and direction. Id. at 30. Upon further clarification, Agent Beam testified that while he did not authorize Defendant to possess the drugs and guns found in his residence, he could authorize someone to commit such acts if it was under Agents' direction and authority. Id. Agent Beam further clarified that he did not have the authority to allow Defendant to possess drugs at his home without control, as the drugs would need to be turned over to DEA agents as soon as possible after the Defendant came into possession. Id. at 30-31. He then testified that he is not allowed under DEA policy to permit a cooperator to possess controlled substances unless there is both knowledge by the DEA agents and an expectation that the drugs would be recovered. Id. at 31. Upon further questioning by defense counsel seeking to probe the outer bounds of the Agent's authority, Agent Beam made three clarifying statements: (1) he does not have authority to allow a confidential source to distribute controlled substances, but he does have the authority to allow a source to possess controlled substances (such as during a controlled buy); (2) if Agent Beam wished to allow a source to possess distribution-level quantities of controlled substances and if Agent Beam did not have a realistic expectation of recovering such drugs, he would

have to get special approval from DEA superiors; and (3) Agent
Beam has the authority to "recommend" that a confidential source
be allowed to distribute drugs without the expectation of
recovery, and while the DEA itself can authorize such operation,
Special Agent Beam could not. Id. at 33.

Having considered the entirety of the relevant testimony of
both Special Agents Beam and Koeppen, and the lack of any
contrary evidence presented or proffered by Defendant, the Court
finds that no reasonable juror could conclude that Special Agent
Beam or Special Agent Koeppen had the authority to allow
Defendant to possess significant quantities of marijuana,
cocaine, cocaine base or ecstasy at his residence without the
Agents having both knowledge and direct supervision over such
activities.[7] Moreover, the undisputed evidence presented to the
Court demonstrates that Agents Beam and Koeppen were not
controlling/supervising Defendant on the day he was arrested; to
the contrary, they had no knowledge of Defendant's drug
possession and appear to have been working in a different city
located more than fifty miles away, subsequently discovering

---

[7] While this Court limits its analysis to the testimony and other evidence
presented in this case, it notes that similar testimony was presented in
the district court in the Fulcher case. See United States v. Fulcher, 188
F. Supp. 2d 627, 632-33 (W.D. Va. 2002) (recounting the testimony of
Government witnesses indicating that "distributing controlled substances
with no expectation of recovery ('letting the drugs walk')" is an "unusual
drug enforcement operation[] which required review and recommendation by
the Justice Department's Sensitive Activity Review Committee ('SARC')
following the preparation of an operational plan justifying the activity,"
and that, "only DEA Headquarters could thereafter approve an operation in
which drugs walked").

16

Defendant's possession of such drugs days or weeks after
Defendant was arrested.[8]  The Court similarly finds that, based
on the testimony and record, no reasonable juror could conclude
that the Richmond DEA agents had the authority to authorize
Defendant, a convicted felon, to possess multiple firearms at
his residence (including two firearms that were allegedly
stolen) at least when such acts were not within their direct
supervision and control, which here, they were not.

In sum, because the DEA agents lacked actual authority to
authorize the conduct at issue, Defendant cannot, as a matter of
law, establish the elements of his affirmative defense based on
"public authority," nor can he negate his criminal intent
through proof that he honestly believed that he was acting in
cooperation with the government.  Fulcher, 250 F.3d at 253.
Defendant will therefore be precluded from advancing such
affirmative defense, or defense strategy,[9] at trial.

---

[8] It appears from the record that, after his arrest in Newport News,
Defendant did not contact the Richmond DEA agents from jail questioning
why he was arrested.

[9] The parties' briefing does not analyze which charged offenses require
the Government to prove "criminal intent," and the Court's ruling
herein makes no finding on such matter.  Additionally, the Court notes
that the record is devoid of any evidence suggesting that Defendant
"honestly believed" that he was acting in cooperation with the agents
by secretly possessing drugs and guns at his residence.  While it is
possible that a plausible explanation could have been offered had
Defendant testified or presented the testimony of a third-party
witness explaining the origin and purpose of these drugs/guns, no such
evidence was offered in this case.

17

## 2. Lack of Evidence of Direction

The Court separately finds that even if DEA Special Agents Beam and Koeppen had the authority to authorize the conduct charged in this case, there is clearly insufficient evidence in the record to reasonably support the finding that Defendant was directly, indirectly, or inferentially instructed by such Agents to possess large quantities of drugs and/or firearms. As discussed in detail on the record at the hearings, Defendant seeks to rely on: (1) the terms of the cooperation agreement itself; (2) the fact that DEA agents continued to communicate with Defendant (via text messages and telephone calls) up until the time of his arrest; and (3) the fact that the DEA agents initially denied that such contact continued into the month of March, instead reporting that it ended in February.

First, the terms of the Confidential Source Agreement are not subject to being reasonably interpreted as providing Defendant with blanket authorization to engage in illegal acts prior to Investigating Agents providing instructions/direction.[10] Second, although there is no question that Defendant has proven

---

[10] Although Defendant seeks to rely on the terms of the Confidential Source Agreement as tacit authorization to perform illegal acts, such agreement unambiguously states that the confidential source is only authorized to act "while under the direct supervision and control of DEA Controlling Investigators," that the source will "provide truthful information at all times," that the source only has immunity for activities "specifically authorized" by Controlling agents, and that the source will follow the instructions of the Controlling Investigators and "will not take any independent action on behalf of the DEA or the United States Government." Def. Hearing Ex. 1.

that Agents Beam and Koeppen collectively made inaccurate statements regarding the date when the DEA lost contact with Defendant, Defendant relies entirely on supposition and speculation in an effort to cast such misstatements as supportive of the defense theory that one of the Agents authorized Defendant to engage in the criminal conduct at issue in this case. In direct conflict with Defendant's speculation, both Agents credibly testified, under oath, that they at no time made statements authorizing Defendant to possess controlled substances or firearms, with Agent Koeppen further testifying that he specifically recalled telling Defendant that he was not authorized to possess drugs except under the Agent's direct control and supervision. While the defense vigorously argued that portions of Agent Koeppen's testimony was not credible (most notably, this final statement), critically, the defense has not introduced any contrary written evidence or testimony, nor has the defense even proffered that Defendant, or any other witness, anticipates testifying to the contrary at trial. Similarly, there is simply no evidence or proffer that could support the finding that Defendant actually believed that he was cooperating with agents when he secretly possessed controlled substances and firearms, nor is there any evidence or proffer explaining what led Defendant to purportedly maintain such a

belief.[11]   In the absence of any evidence or proffer from the defense on these critical points, after having been repeatedly invited by the Court to produce the same, the Court alternatively finds that the Government has demonstrated, as a matter of law, that Defendant cannot establish an element of the public authority defense (that the defendant <u>reasonably relied</u> on the authority of a government official <u>to engage him</u> in a covert activity) or the innocent criminal intent strategy (that defendant honestly believed that he was acting in cooperation with the government when possessing such drugs and guns).   In light of the evidentiary record, the Court reaches such conclusion even if it disregards Agent Koeppen's testimony about his recollection of affirmatively warning Defendant not to acquire drugs on his own.   Defendant is therefore precluded from advancing the disputed affirmative defense/defense strategy at trial.

---

[11] Defendant previously argued to this Court that he need not testify to demonstrate that he reasonably believed that his drug and gun possession was authorized and/or that he was assisting federal authorities by possessing such drugs and guns, but that the defense may instead prove such facts to a jury through other witnesses/evidence.   While the Court agreed with such assertion on a conceptual level, and it permitted Defendant to subpoena and question Agent Koeppen in an effort to elicit testimony in support of such defense theory, the end-result of the multi-day hearing is that the defense was unable to elicit testimony suggesting that Agents Beam and/or Koeppen, or anyone else, made any statement that even suggested that Defendant was permitted to secretly acquire guns or substantial quantities of controlled substances.   Defendant therefore lacks evidence that would reasonably support a finding in his favor on this issue.

## D. Conclusion

For the reasons set forth above, Defendant's unopposed motion to supplement is **GRANTED**.  ECF No. 40.  Defendant's motion to dismiss the indictment is **DENIED**.  ECF No. 14.  The Court **GRANTS** the Government's pre-trial request/informal motion that Defendant be precluded from advancing at trial either the affirmative defense of "public authority" or the related defense strategy seeking to negate the Government's proof of "criminal intent" through presenting evidence or argument contending that Defendant honestly believed that he was acting in cooperation with the Government when he secretly possessed four guns and multiple types of controlled substances.  While this Court does not issue a pre-trial ruling constraining a defense strategy in a criminal case without considerable hesitation, the current record is insufficient to permit any reasonable factfinder to conclude: (1) that the supervising DEA agents had the actual authority to authorize the conduct charged in the indictment; or (2) that the supervising agents, directly or indirectly, authorized such conduct or made statements reasonably interpreted as authorizing such conduct.

Notwithstanding such findings, and the repeated opportunities given to Defendant to testify, or to produce or proffer other evidence, the Court is willing to consider, for example, a motion by Defendant seeking to reopen the evidentiary

hearing should Defendant wish to testify about instructions he received from Agent Beam, Agent Koeppen, or any other DEA agent that purportedly authorized Defendant to possess substantial quantities of controlled substances and/or four firearms.

The Clerk is **REQUESTED** to send a copy of this Memorandum Order to all counsel of record.

**IT IS SO ORDERED.**

/s/

Mark S. Davis
UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
May 4 , 2017